UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LYNASIA WHICHARD,

              Plaintiff,

-against-

UNIVERSAL PROTECTION SERVICE, LLC,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No. 1:21-cv-375

**COMPLAINT**

Plaintiff Demands a Trial by Jury

## PRELIMINARY STATEMENT

Plaintiff LYNASIA WHICHARD ("Plaintiff" or WHICHARD") complains pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), New York State law, and New York City law, and seeks damages to redress the injuries Plaintiff suffered as a result of, *inter alia,* gender discrimination, sexual harassment, retaliation, and a hostile work environment.

## JURISDICTION & VENUE

1. This Court has federal question jurisdiction over the Title VII claim pursuant to 28 U.S.C. § 1331.

2. This Court has supplemental jurisdiction over the related New York State and City law causes of action asserted in this complaint pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) because the events or omissions which gave rise to the claims asserted herein occurred within this Court's

jurisdiction.

4. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## PARTIES

5. At all times material, Plaintiff LYNASIA WHICHARD ("Plaintiff" or "WHICHARD") was and is an individual female residing in the State of New York, Bronx County.

6. At all times material, UNIVERSAL PROTECTION SERVICE, LLC (hereinafter referred to as "Defendant") was and is a foreign limited liability company, duly existing by the virtue and laws of the State of Delaware.

## MATERIAL FACTS

7. In or around February of 2019, Defendant employed Plaintiff as a Security Professional. At all times material, Plaintiff worked at two locations under contract with Facebook.

8. DAVONTE MITCHELL ("MITCHELL") was and is Defendant's Supervisor and held the authority to direct Plaintiff's daily work activities.

9. In or around February of 2019, MITCHELL picked up Plaintiff's phone and commented on Plaintiff's screen saver which, at that time, was a photo of Plaintiff. MITCHELL said that Plaintiff "looked nice" and told her to wear her hair like that "more often." Plaintiff was uncomfortable but did not speak up because she was a new employee and thought MITCHELL's inappropriate comment might be a one-off occurrence.

10. On or about March 11, 2019, Defendant's employee BERNARD CASTILLO ("CASTILLO") told Plaintiff about a conversation he had with MITCHELL. In the reported conversation, CASTILLO told MITCHELL that Plaintiff helped CASTILLO out with his hair. MITCHELL then asked "Is that all you did? Did you sleep with her?" Plaintiff was shocked that her

supervisor was speaking so inappropriately about her and asked CASTILLO to shut down the rumor immediately.

11. Thereafter, MITCHELL would continuously ask CASTILLO if he was sleeping with Plaintiff. CASTILLO would report MITCHELL's comments to Plaintiff.

12. On or about May 7, 2019, MITCHELL commented on a pair of sneakers Plaintiff was wearing, stating "Did [CASTILLO] let you leave the house like that?"

13. Plaintiff then told MITCHELL that she had heard what he was saying about Plaintiff and CASTILLO. Plaintiff informed MITCHELL that his comments were inappropriate and made her feel uncomfortable.

14. MITCHELL seemed shocked that Plaintiff was aware of the rumors he had been spreading around to the staff about Plaintiff and CASTILLO. MITCHELL claimed that he was "only playing" and assured Plaintiff that it would stop immediately.

15. MITCHELL then asked Plaintiff if she could help him style his hair. MITCHELL told Plaintiff that if she helped him then she would receive more hours and a better schedule. Plaintiff was very uncomfortable with MITCHELL's proposition.

16. On or about May 24, 2019, Defendant's Assistant Account Manager EDWIN CEPIN ("CEPIN") offered Plaintiff a 40 hour a week position at a preferable post.

17. Later that day, MITCHELL found Plaintiff at work. MITCHELL then informed Plaintiff that CEPIN gave her the position because CEPIN is a good friend of his and that he had instructed CEPIN to do so. MITCHELL also went on to tell Plaintiff that he had seen her Facebook "story" the night before. MITCHELL wanted to know what male was also in her Facebook story. MITCHELL stated, "Were you two having sex? Because I know that pussy is tight." Plaintiff kept quiet out of pure shock and embarrassment. MITCHELL then asked Plaintiff if she was

attracted to or could see herself in a relationship with CASTILLO or any of the other men that worked for Defendant. Before Plaintiff could respond to MITCHELL's vulgar and intrusive line of questioning, Defendant's employee FEDORAH DIMANCHE (DIMANCHE) walked over where they were standing.

18. At all times material, DIMANCHE is an individual female who identified herself to Plaintiff as a lesbian.

19. MITCHELL proceeded to ask Plaintiff if she would be comfortable sleeping with a woman and if she could see herself sleeping with DIMANCHE. Plaintiff, embarrassed and uncomfortable, told MITCHELL that she could not see herself with anyone at her place of employment, man or woman, and began to walk away.

20. MITCHELL began to follow Plaintiff, telling Plaintiff, among other things, all about the benefits of being with a woman, stating that Plaintiff should "lay down and let a woman do whatever she wanted to you" and that Plaintiff would enjoy being a "Pillow Princess."

21. Plaintiff was very uncomfortable with the conversation but was afraid to speak up because MITCHELL had just, allegedly, given her more hours and a favorable posting.

22. On or about June 9, 2019, Plaintiff came to work and checked in with MITCHELL and another of Defendant's Supervisors CHRISTOPHER SANCHEZ ("SANCHEZ").

23. MITCHELL told Plaintiff he was going to write her up for one of her Facebook pictures being "too sexy."

24. MITCHELL carried on the threat of a write up for a few minutes before SANCHEZ finally told Plaintiff that MITCHELL was "playing" and that she could not actually be written up for a Facebook picture.

25. On or about June 14, 2019, at a birthday gathering for a fellow employee at a restaurant,

Plaintiff did her best to avoid MITCHELL. MITCHELL managed to stop Plaintiff on her way to the restroom and told her that a "Molly" might be in her drink when she got back. Plaintiff was frightened by MICTHELL's threat to drug her. Plaintiff left the restaurant immediately.

26. On or about July 1, 2019, Plaintiff came into work and saw CASTILLO and Defendant's Supervisor KENDEL MELBOURNE ("MELBOURNE") at the front desk.

27. CASTILLO and MELBOURNE let Plaintiff know that MITCHELL had been showing a picture of Plaintiff to co-workers, telling co-workers that Plaintiff was sexy and couldn't understand why no one at work has been trying to "fuck her."

28. CASTILLO and MELBOURNE were laughing and treating the situation as a joke.

29. Thereafter, Plaintiff contacted Defendant's Account Manager ROBERT MARTIN ("MARTIN") to formally complain about MITCHELL.

30. After receiving her complaint, MARTIN, in a very confrontational manner, approached Plaintiff while she was working. Plaintiff felt uncomfortable speaking about the situation with MARTIN while in full view of her fellow employees. Despite this, Plaintiff told MARTIN about all of MITCHELL's inappropriate comments and behavior and the complicity of her fellow employees and supervisors. MARTIN snapped at Plaintiff, telling her she should "**act like an adult**" and scolded her for not telling him sooner.

31. It was only at this point that MARTIN took Plaintiff into a private room and made her submit a written statement about the ongoing sexual harassment.

32. On or about July 3, 2019, Defendant called Plaintiff into a meeting with MARTIN and Defendant's Human Resources representative ROLAND NEWPORT ("NEWPORT").

33. Despite having a written report, NEWPORT made Plaintiff recount all the acts of sexual harassment she had been subjected to up until that point. When Plaintiff was finished,

NEWPORT asked Plaintiff if she wanted to be transferred to another job site.

34. Plaintiff told NEWPORT and MARTIN that she did not want to be transferred to another job site. She felt it would not be fair to ask her to give up a well-paying post because she was the victim of harassment. Plaintiff also told NEWPORT and MARTIN that she was afraid she would be retaliated against because MITCHELL was her supervisor and was friends outside of work with many of the other supervisors and employees.

35. On or about July 5, 2019, Defendant's employee TRIANA MINAYA ("MINAYA") began telling fellow employees that she had been called in as a witness in an investigation concerning MICTHELL and Plaintiff.

36. Plaintiff confronted MINAYA and asked her to please keep the investigation to herself.

37. MARTIN approached Plaintiff later that day and scolded her for approaching MINAYA, stating: "Is this investigation even the truth? Are you being honest? Your name is in a lot of drama now. You should've never spoken to her, you should have spoken to me."

38. Plaintiff apologized for approaching MINAYA but expressed to MARTIN her frustration that the investigation was not being handled discreetly.

39. Later that day, MARTIN called Plaintiff and told her that MITCHELL would be removed from the Facebook account and would no longer work at the two Facebook locations.

40. After Defendant removed MITCHELL from the account, Defendant's supervisors and employees began to retaliate against Plaintiff. By way of example, fellow employees stopped talking to her, ignored her work-related questions or concerns and began to come late to relieve her for breaks or at the end of her shift.

41. Defendant further retaliated against Plaintiff by cutting her hours from 40 hours to 24 hours or less per week. All the while Defendant gave other employees with less seniority more hours

than Plaintiff and, in some instances, even gave them overtime hours.

42. On or about August 15, 2019, Plaintiff walked past SANCHEZ and a few other fellow employees on her way into work. As she passed, Plaintiff heard SANCHEZ say "The work snitch is here. HR is here today so be good or she'll tell on you."

43. Plaintiff made her Assistant Account Manager CEPIN aware of SANCHEZ's comments. In response, Defendant took no reasonable or immediate action to help combat the on-going retaliatory environment.

44. Plaintiff was upset that her complaints about the sexual harassment resulted in workplace retaliation and a hostile work environment with no support from upper management.

45. Defendant continued to cut Plaintiff's hours to the point where she only received 8 hours over the span of 18 days.

46. Despite having open availability and more seniority than other employees, Defendant continues to give Plaintiff, on average, 16-24 hours a week.

47. On or about November 15, 2019, Plaintiff was dejected and felt hopeless. She sent NEWPORT an email regarding the continuing retaliation she was being subjected to.

48. On or about November 18, 2019, NEWPORT called Plaintiff to discuss the issues raised by Plaintiff in her email.

49. Later that day, Plaintiff saw MITCHELL walk into Facebook while she was working at her post.

50. MITCHELL went out of his way to hand his visitor's badge directly to Plaintiff. Plaintiff was frightened as she had to check MITCHELL in.

51. Thereafter, MITCHELL hung around fraternizing with employees for over two hours. Plaintiff was outraged that MITCHELL was not banned from the building (a common practice for the

security team in that building that had been done before).

52. Plaintiff emailed Defendant's HR Department to notify them that her harasser was in the building and given visitor status. Defendant took no immediate or reasonable action.

53. On or about December 2, 2020, Defendant's Account Manager MARTIN and Human Resources representative NEWPORT, called Plaintiff and informed her that an investigation had concluded and MITCHELL was found to be completely innocent.

54. Plaintiff was extremely discouraged by Defendant's "findings," and even more disappointed that MARTIN—the individual who had decided to cut Plaintiff's hours out of retaliatory animus—was spearheading the ostensible investigation.

55. Therefore, on or about December 3, 2020, Defendant constructively terminated Plaintiff.

56. As a result of Defendant's discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer from anxiety and severe emotional distress.

57. Because of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

58. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendant.

59. The above are just some of the examples of the unlawful employment practices that Defendant subjected Plaintiff to.

**AS A FIRST CAUSE OF ACTION**
**<u>DISCRIMINATION UNDER TITLE VII</u>**

60. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

complaint.

61. Title VII states in relevant part as follows:

"(a) Employer practices:

It shall be an unlawful employment practice for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

62. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex.

63. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by constructively terminating and otherwise discriminating against Plaintiff as set forth herein because of Plaintiff's sex.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER TITLE VII

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

65. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

66. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e seq. by

discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendant and/or Defendant's employees and supervisors.

**AS A THIRD CAUSE OF
ACTION UNDER STATE LAW
DISCRIMINATION**

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

68. New York State Executive Law § 296 provides that: "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

69. Defendant violated the section cited herein by discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of Plaintiff's sex.

70. Defendants violated the section cited herein as set forth.

**AS A FOURTH CAUSE OF
ACTION UNDER STATE LAW
RETALIATION**

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

72. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this

article."

73. As a direct consequence of Plaintiff opposing discrimination in the workplace, Defendant unlawfully retaliated against Plaintiff by constructively terminating, materially altering his terms and conditions of employment, cutting hours, harassing, and intensifying their discriminatory comments and conduct, among other adverse and discouraging acts.

74. Defendant violated the section cited herein as set forth.

## AS A FIFTH CAUSE OF
## ACTION UNDER STATE LAW
## AIDING & ABETTING

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

76. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

77. Defendant participated in, aided, abetted, and encouraged Defendant's employee to unlawfully harass and retaliate against Plaintiff.

78. Defendant violated the section cited herein as set forth.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

79. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

80. The Administrative Code of the City of New York § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability,

marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

81. Defendant engaged in an unlawful discriminatory practice and violated the section cited herein by constructively discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her gender, together with harassment and causing a hostile work environment based on same.

82. Plaintiff hereby makes a claim against Defendant under all of the applicable paragraphs of the New York City Administrative Code Title 8.

83. Defendant violated the above and Plaintiff suffered numerous damages as a result.

## AS A SEVENTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

85. The New York City Administrative Code Title 8, § 8-107(1) (e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

86. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, § 8-107(1) (e) by discriminating and retaliating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of her employer.

87. Defendant violated the above and Plaintiff suffered numerous damages as a result.

### AS AN EIGHTH CAUSE OF ACTION
### FOR AIDING & ABETTING UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE

88. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

89. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

90. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

91. Defendant violated the above and Plaintiff suffered numerous damages as a result.

### AS A NINTH CAUSE OF ACTION
### FOR INTERFERENCE WITH A PROTECTED RIGHT UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE

92. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

93. New York City Administrative Code Title 8-107(19) provides that: "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

94. Defendant violated the above and Plaintiff suffered numerous damages as a result.

## AS A TENTH CAUSE OF ACTION
## FOR SUPERVISOR LIABILITY UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

95. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

96. New York City Administrative Code Title 8-107(13)(b) provides that: "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where; (i) the employee or agent exercised managerial or supervisory responsibility; (ii) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (iii) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

97. Defendant violated the above and Plaintiff suffered numerous damages as a result.

### JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Date: New York, New York
January 15, 2021

Respectfully Submitted,

**DEREK SMITH LAW GROUP, PLLC**

By: */s/ Alexander G. Cabeceiras*
Alexander G. Cabeceiras, Esq.
One Penn Plaza, Suite 4905
New York, New York 10119